## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEN MOSBAH SAIDI | : | NO. 3:20-CV-00894 |
| Plaintiff | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| YORK COUNTY d/b/a YORK COUNTY PRISON, and TROY TYSON, ERIC BUSH, BRANDON BANKARD, MICHAEL BAUGHER JOHN DARYMAN, C.O. MARIN, C.O. SCHNEIDER, JOSHUA MARTINEZ, and JOHN/JANE DOES, in their individual capacities, | : | |
| Defendants | : | |

**BRIEF OF DEFENDANTS YORK COUNTY, d/b/a YORK COUNTY PRISON, TROY TYSON, ERIC BUSH, BRANDON BANKARD, MICHAEL BAUGHER, JOHN DARYMAN, C.O. MARIN, C.O. SCHNEIDER, AND JOHN MARTINEZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

By:   Donald L. Reihart, Esq.
      Sup. Ct. I.D. #07421
      28 E. Market Street 2nd Floor
      York, PA  17401
      Assistant Solicitor for the County of York
      and Solicitor for the York County Prison
      Counsel for York County Defendants

# TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................2

   A. Procedural History ................................................................2
   B. Statement of Facts ...............................................................7

II. QUESTIONS PRESENTED...........................................................7

   A. Should A Motion for Summary Judgment Be Entered In Favor of
      All the Defendants As There Are No Genuine Issues As To Any
      Material Fact and the Defendants Are Entitled To Judgment As A
      Matter of Law?.................................................................7

III. ARGUMENT ............................................................................7

   Other Claimed Constitutional Violations ....................................18
   Standard of Review.................................................................7
   Use of Unconstitutional Force ................................................11
   Verbal Harassment or Abuse As A Constitutional Violation................15

IV. CONCLUSION ........................................................................20

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...................................10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).....................9

Astori v. Bell Telephone Co. of PA., 24 F. 3rd. 508 (3rd. Cir. 1994) ..............8

Bell v. Wolfish, 441 U.S. 520, 535-539.........................................................11

Boston v. Stanton, 450 Fed. Supp. 1049 (W.D. Mo. 1978) ..........................16

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).....................................11

Colburn v. Upper Darby Twp., 838 Fed. 2d 663, 668 (3rd Circ. 1988) ..........11

Collins v. Cundy, 603 Fed. 2d 825 (1979) ....................................................16

Dietz Laboratories, Inc. v. Heinz, 647 F. 2d. 402 (3rd. Cir. 1981)...................9

Ellingburg v. Lucas, 518 Fed. 2d 1196 (8th Circ. 1975)...............................16

Fuentes v. Wagner, 206 Fed. 3d 335, 344 (3rd Circ. 2000) .........................11

Gabi v. Jacoby, 800 F. Supp. 1149, 1153 (S.D.NY 1992) ..............................9

Gabi, 800 F. Supp. 1154. ...............................................................................9

Graham v. Connor, 490 U.S. 386, 395, 396 (1989)......................................11

Hadley v. Gutierrez, 526 Fed. 3d 1324, 1332 (11th Circ. 2008) ...................19

Hudson v. McMillian, 503 U.S. 1 (1992).......................................................12

Hudson v. McMillian, 503 U.S. 1, 7 (1992) ..................................................12

Johnson v. Glick, 481 Fed. 2d 1028, 1033 (1973)........................................15

Maine v. Thiboutot, 448 U.S. 1 (1989)...........................................................9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
    586 N10 (1986) ........................................................................................10

Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) 8

Monell v. New York City Department of Social Services, 436 U.S. 658,
    98 S.Ct. 2018, 56 L.Ed. 2d. 611 (1978)....................................................18

Palmer v. Johnson, 212 U.S. Dist. LEXIS 13828 (2012) ..............................15

Parratt v. Taylor, 451 U.S. 527 (1981)............................................................9

Podobnik v. United States Postal Serv., 409 Fed. 3rd 584, 594
    (3rd Circ. 2005) ........................................................................................10

Procunier v. Navarette, 434 U.S. 555 (1978)................................................19

Rhodes v. Chapman, 452 U.S. 337, 346 (1981) ...........................................15

Scott v. Harris, 550 U.S. 372, 380 (2007).....................................................15

urner v. Schering-Polugh Corp., 901 F. 2d. 335, 340 (3rd. Cir. 1990) ...........8

Whitley v. Albers, 475 U.S. 312, 319 (1986).................................................11

Wishkin v. Potter, 476 Fed. 3rd 180, 184 (3rd Cir. 2007)..............................10

Young v. Quinlan, 960 F. 2d. 351, 357 (3rd. Cir. 1992).................................8

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...................................10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)......................9

Astori v. Bell Telephone Co. of PA., 24 F. 3rd. 508 (3rd. Cir. 1994) ...............8

Bell v. Wolfish, 441 U.S. 520, 535-539........................................................11

Boston v. Stanton, 450 Fed. Supp. 1049 (W.D. Mo. 1978) ..........................16

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)......................................11

Colburn v. Upper Darby Twp., 838 Fed. 2d 663, 668 (3rd Circ. 1988) ..........11

Collins v. Cundy, 603 Fed. 2d 825 (1979)...................................................16

Dietz Laboratories, Inc. v. Heinz, 647 F. 2d. 402 (3rd. Cir. 1981)..................9

Ellingburg v. Lucas, 518 Fed. 2d 1196 (8th Circ. 1975)...............................16

Fuentes v. Wagner, 206 Fed. 3d 335, 344 (3rd Circ. 2000) .........................11

Gabi v. Jacoby, 800 F. Supp. 1149, 1153 (S.D.NY 1992) .............................9

Gabi, 800 F. Supp. 1154. ............................................................................9

Graham v. Connor, 490 U.S. 386, 395, 396 (1989).......................................11

Hadley v. Gutierrez, 526 Fed. 3d 1324, 1332 (11th Circ. 2008) ....................19

Hudson v. McMillian, 503 U.S. 1 (1992). ....................................................12

Hudson v. McMillian, 503 U.S. 1, 7 (1992).................................................12

Johnson v. Glick, 481 Fed. 2d 1028, 1033 (1973).........................................15

Maine v. Thiboutot, 448 U.S. 1 (1989).........................................................9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
    586 N10 (1986) ...................................................................................10

Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) 8

Monell v. New York City Department of Social Services, 436 U.S. 658,
    98 S.Ct. 2018, 56 L.Ed. 2d. 611 (1978) ...............................................18

Palmer v. Johnson, 212 U.S. Dist. LEXIS 13828 (2012) ..............................15

Parratt v. Taylor, 451 U.S. 527 (1981)..........................................................9

Podobnik v. United States Postal Serv., 409 Fed. 3rd 584, 594
    (3rd Circ. 2005) ...................................................................................10

Procunier v. Navarette, 434 U.S. 555 (1978)................................................19

Rhodes v. Chapman, 452 U.S. 337, 346 (1981) ...........................................15

Scott v. Harris, 550 U.S. 372, 380 (2007).....................................................15

urner v. Schering-Polugh Corp., 901 F. 2d. 335, 340 (3rd. Cir. 1990)...........8

Whitley v. Albers, 475 U.S. 312, 319 (1986) .................................................11

Wishkin v. Potter, 476 Fed. 3rd 180, 184 (3rd Cir. 2007)...............................10

Young v. Quinlan, 960 F. 2d. 351, 357 (3rd. Cir. 1992).................................8

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Procedural History

On June 16, 2019, Inmate Ben Mosbah Saidi (hereinafter referred to as "Inmate Saidi") filed a Complaint alleging that his civil rights were violated by the above named York County Defendants.

The Complaint contained a claim for compensatory damages and identified York County d/b/a York County Prison, Troy Tyson, Eric Bush, Brandon Bankard, Michael Baugher, John Daryman, C.O. Marin, C.O. Schenider, Joshua Martinez, and John/Jane Does, in their individual capacities, as Defendants who had violated "Inmate Saidi's" civil rights while confined in the York County Prison between August 2019 and February 2020.

The York County Defendants have filed a Motion for Summary Judgment claiming that "Inmate Saidi's" Complaint fails to create a genuine issue for trial and that Summary Judgment is appropriate, as a matter of law.

### B. Statement of Facts

In his Complaint, "Inmate Saidi's" alleges that some of the York County Defendants called him names, including identifying him as a

"terrorist", an "illegal immigrant", a "mercenary", and allegedly set about a course of conduct to "make his life a living hell", which would cause him to commit suicide.

The Affidavits of the York County Defendants, which are filed with the Statement of Material Facts, tell an entirely different story. "Inmate Saidi" is the one who was the source of alleged disparaging remarks and the discriminatory mistreatment that he alleges was caused by his ethnicity and religion originated in his own mind.

On December 30, 2019, at about 8:10 a.m., Aimee Liephart, LPN was performing a screening check of "Inmate Saidi's" confinement status. She found him to be highly agitated and aggressive. Before she could ask him how he was doing, "Inmate Saidi" stated, "I'm going to hurt everyone, everybody that hurt me, I am a Marine and will hurt everyone here and everyone who put me here." Her response was to make the authorities aware of "Inmate Saidi's" threats and he was scheduled to be transported to the medical section for a mental health assessment.

"Inmate Saidi's" record, as a prisoner, was one of defiance and violation of the disciplinary rules of the prison.

3

On one occasion, "Inmate Saidi" was found to have a toothbrush sharpened and capable of being used as a weapon. "Inmate Saidi" was tried and found guilty of possession of this weapon and sentenced to serve time in the behavioral adjustment unit of the prison.

"Inmate Saidi" characterized his punishment as proof of the discrimination that he was suffering and claims that his possession of the weapon was a "set up".

On December 30, 2019, when "Inmate Saidi" was advised that he needed to be transported to the mental health section, he refused to cooperate with the transporting officers.

"Inmate Saidi" refused to allow himself to be cuffed with the handcuffs behind him and only after a series of refused orders did the Correction Officers agree that he could be transported with the handcuffs in front of him.

"Inmate Saidi", during the beginning and through the escort, refused to comply with the order to "face forward" and to walk freely toward the destination. Instead, he challenged one of the escorting Correction Officers to a fight and requested that the handcuffs be removed and continued to refuse orders to comply with their moving instructions. The results of

4

"Inmate Saidi's" refusal to comply with the escort orders resulted in his being placed against the wall, where he continued to resist. Lieutenant Strebig radioed for the delivery of an Emergency Restraint Chair (ERC). "Inmate Saidi" was placed upon the floor. Conservative measures were made by the staff to control him until the ERC arrived. When the ERC get there, "Inmate Saidi's" handcuffs were removed and he was placed in the ERC, which was used to transport him to the medical section. He was given a prompt evaluation and an appropriate decision was made to send him to the Emergency Room of York Hospital for appropriate evaluation and treatment.

During the time that efforts were being made to control "Inmate Saidi", a Lieutenant Strebig threatened to use a taser but never touched the body of "Inmate Saidi".

The only force that was used was the force necessary to put him against the wall and when he continued to resist, he was placed on the floor and handcuffs were removed and put in the ERC. No strike force with any of the Correction Officers fists, elbows, knees, hands, or any other weapon was used on "Inmate Saidi" to gain control.

The Statement of Material Facts includes the Affidavits of Deputy Warden of Security, Adam Ogle and Intelligence Commander, Shaw Rohrbaugh. Deputy Warden Ogle's Affidavit provides a thorough explanation of the York County Prison's use of force policies and procedures. He explains that the prison's policies and procedures require a review of all use of force, which included the force applied to "Inmate Saidi" on December 30, 2019.

The details of the review and the findings of the use of force on December 30, 2019, conclude with a determination that the force was lawful and appropriate.

Commander Rohrbaugh's Affidavit reviews the surveillance information and explains that "Inmate Saidi's" complaints of torture and excessive force being used on December 30, 2019, are not well founded.

"Inmate Saidi" was not the victim of any kind of hand strikes, elbow strikes, or knee strikes that were designed to cause him pain.

"Inmate Saidi's" version of what happened in the transport is that he was brutalized and tortured and that one of the Correction Officers kept pulling his shoulder that had been injured in a former fight with police officers and for which he needed rotator cuff surgery.

6

Video tapes of the incident confirm that "Inmate Saidi's" description of how he was treated in the transport, are simply false. The video tapes are submitted with the Motion for Summary Judgment and indicate that only that force, as was necessary to control "Inmate Saidi", was exercised.

While "Inmate Saidi" did suffer some minor injuries, they were the result of the force that was necessary to control him. No use of force with sadistic and malicious intent was inflicted upon him.

## II.   QUESTION PRESENTED

**A.   Should A Motion for Summary Judgment Be Entered In Favor of the Defendants As There Are No Genuine Issues As To Any Material Fact and the Defendants Are Entitled To Judgment As A Matter of Law?**

## III.   ARGUMENT

**A.   A Motion for Summary Judgment Should Be Entered In Favor of the Defendants As There Are No Genuine Issues As To Any Material Fact and the Defendants Are Entitled To Judgment As A Matter of Law.**

### Standard of Review

Fed. R. Civ. P. 56(c) requires that the Court enter Summary Judgment "... forthwith, if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact, and that the moving party is entitled to Judgment, as a matter of law."

To survive a Summary Judgment Motion, the party opposing the Motion must do more than simply show that there is some metaphysical doubt as to the material facts.   Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986), and Turner v. Schering-Polugh Corp., 901 F.2d. 335, 340 (3rd. Cir. 1990).

The party moving for Summary Judgment bears the burden of showing the absence of a genuine issue as to any material fact.   Young v. Quinlan, 960 F.2d. 351, 357 (3rd. Cir. 1992).

Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits, or by the depositions and admissions on file. Astori v. Bell Telephone Co. of PA., 24 F.3rd. 508 (3rd. Cir. 1994).   It is understood that all inferences, however, "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant, then the non-movant must be taken as

8

true." *Id.*, slip Opinion at 7.  See also, <u>Dietz Laboratories, Inc. v. Heinz</u>, 647 F.2d. 402 (3rd. Cir. 1981).

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no genuine issue of a material fact.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  "As to materiality, it is the substantive law's identification of which facts are critical and which facts are relevant that govern." <u>Gabi v. Jacoby</u>, 800 F. Supp. 1149, 1153 (S.D. NY 1992).  A dispute is genuine, only if there is sufficient evidence favoring the non-moving party, for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. 242.  In summary, if the Court determines that the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  <u>Gabi</u>, 800 F. Supp. 1154.

In an action brought pursuant to 42 U.S.C. §1983, a plaintiff must allege and prove that the defendants deprived him of a right secured by the Constitution and laws of the United States. <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1989)... and that this deprivation took place by an individual acting under color of state law. <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981).

The moving party in a Motion for Summary Judgment bears the burden of proving that new genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 N10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the party's favor. Wishkin v. Potter, 476 Fed. 3d 180, 184 (3rd Cir. 2007).

If the moving party has demonstrated an absence of material fact, the non-moving party must then come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Supra. at 587. The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a Motion for Summary Judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Moreover, a party opposing Summary Judgment must present more than just "bear assertions, conclusory allegations, or suspicions to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 Fed. 3rd 584, 594 (3rd Circ. 2005), quoting Celotex Corp. v. Catrett, 477 U.S.

317, 325 (1986). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment, as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. at 322.

### Use of Unconstitutional Force

"Inmate Saidi's" civil rights claims against the York County Defendants are based upon the concept that excessive force was used in violation of the 14th Amendment to the Constitution of the United States. "Inmate Saidi", at the time of the incident, was a pre-trial detainee. Therefore, it is the due process clause of the 14th Amendment that protects pre-trial detainees from the use of force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395, 396 (1989), citing Bell v. Wolfish, 441 U.S. 520, 535-539:

> ... Under the 14th Amendment, a pre-trial detainee is entitled "at a minimum" to no less protection than a sentenced inmate is titled under the 8th Amendment. Fuentes v. Wagner, 206 Fed. 3d 335, 344 (3rd Circ. 2000), citing Colburn v. Upper Darby Twp., 838 Fed. 2d 663, 668 (3rd Circ. 1988).

The 8th Amendment protects confined prisoners against the infliction of cruel and unusual punishment. However, not every governmental action affecting the interest or wellbeing of a prisoner is subject to 8th Amendment scrutiny. Whitley v. Albers, 475 U.S. 312, 319 (1986).  After incarceration,

11

only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the 8th Amendment.

> … It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the cruel and unusual punishment clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cell block. *Id.*

The Supreme Court of the United States considered the use of excessive force by prison guards in <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

In <u>Hudson</u>, the Supreme Court held that the use of force by prison guards only violates the 8th Amendment when such force is not used in a good faith effort to maintain and restore discipline. This case indicates that it is only when force is administered maliciously or sadistically to cause harm, that a constitutional violation may have occurred. <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992) made it clear that to determine whether the use of force is unconstitutional, the Court must consider several factors, including:

1. The need for application of force;

2. The relationship between the need and the amount of the force used;

3. The threat reasonably perceived by the responsible official;

4. Any efforts made to temper the severity of a forceful response;

5.    The extent of the injury to the inmate from the use of force by the prison guards.

In this case, the facts establish that "Inmate Saidi" provoked a defensive control response from Correction Officers Schneider and Fitzkee while they were escorting him to the medical section for a mental health evaluation.

"Inmate Saidi" was being transported for a mental health evaluation because of threats that he had made to harm other people, which were known to both of the transporting Correction Officers.

"Inmate Saidi" refused to follow orders which required him to look straight ahead and to stop resisting the transportation effort.

The video tapes demonstrate clearly two things: First, that "Inmate Saidi's" explanation of what happened to him on the transport, which he alleges involved having his shoulders pulled and his arms pulled causing him great pain and which caused him to cry out, simply did not happen. The second thing is that the Correction Officers placed him against the wall, called for an ERC because he was not following theirs orders and was resisting the transport. He continued his resistance which resulted in him being placed on the floor.

13

The video tapes demonstrate that no malicious and sadistic force was applied to the "Inmate Saidi". He was not struck by any weapon; force was not used in the form of inducing pain with a billy club or striking him with a fist, elbow, foot, knee, or through the use of a weapon of any kind. In fact, Lieutenant Strebig activated, but did not use, a taser. "Inmate Saidi" was then, after he was properly restrained and placed in the ERC, transported promptly to the medical section for appropriate assessment.

It is submitted that the five factors that are to be considered justify the force that was used. The injuries that "Inmate Saidi" suffered, while he claims them to include a dislocated jaw, tooth injuries, cut lip, and other injures which he alleged occurred, were clearly caused by the efforts to control him but not by any intent to inflict malicious and sadistic punishment, but only to maintain discipline and security. Hudson, Supra. p7.

The Affidavits of Deputy Warden Ogle and Security Commander Rohrbaugh make it clear that York County Prison had and enforces appropriate use of force policies and that there is no evidence at all that there were inadequate policies to provide appropriate constitutional protection for inmates where force was required to be used.

14

It is noted, under the Constitutional standards established by the Supreme Court of the United States: "Not every push or shove, even if it may later seem unnecessary, in the peace of a judge's chambers, violates a prisoner's constitutional rights. Johnson v. Glick, 481 Fed. 2d 1028, 1033 (1973), quoted in Hudson v. McMillian, Supra. When the evidence establishes that the use of force and infliction of paint are based upon penalogical justification, there is no 8th Amendment liability. Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

In this case, there is clear video evidence that clearly contradicts portions of "Inmate Saidi's" version of what happened in the use of force.

When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe, a court should not adopt that version of facts for purpose of ruling on a Motion for Summary Judgment. Scott v. Harris, 550 U.S. 372, 380 (2007), Palmer v. Johnson, 212 U.S. Dist. LEXIS 13828 (2012).

### Verbal Harassment or Abuse As A Constitutional Violation

Verbal harassment or abuse of the sort alleged in this case is not sufficient to state a constitutional violation under 42 U.S.C. §1983. Collins v. Cundy, 603 Fed. 2d 825 (1979) (verbal harassment or abuse such as a

Sheriff laughing at and threatening to hang an inmate is not sufficient to state a constitutional deprivation under 42 U.S.C. §1983), citing Boston v. Stanton, 450 Fed. Supp. 1049 (W.D. Mo. 1978); Ellingburg v. Lucas, 518 Fed. 2d 1196 (8th Circ. 1975).

It is also noted that there is no evidence in the case which verifies that, in fact, "Inmate Saidi" was harassed as he alleges. On some occasions, he was the actual source of the claims of being harassed. For example, he excused one of the Correction Officers as labeling him as a "terrorist". "Inmate Saidi" did this with other Correction Officers; it is submitted, in an effort to create a false impression of the actual lawful conditions of his confinement.

### County of York

The County of York does not oversee the York County Prison. During the time that "Inmate Saidi" was confined in the York County Prison, there was no policy or custom of York County that was violated or that represents a violation and no corporate policy or procedure violated the constitutional rights of "Inmate Saidi".

"Inmate Saidi's" First Amended Complaint identifies York County as a party and alleges that, as the York County Prison, the County is responsible for its management and oversight. This is simply not true.

The responsibility for operating the York County Prison has been specially delegated to the Board of Inspectors of the York County Prison, also known as the York County Prison Board by the Act of August 11, 2009, P.L. 147, No. 33, Section 7, 61 Pa. CSA §1731, et seq., which provides that:

> The Board and the officers adopted by it "...shall provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution," 61 Pa. C.S.A. §1731(3).

The act also provides:

> ...The Board shall make such rules and regulations for the government and management of the county correctional institution and the safekeeping, discipline, and employment of the inmates as maybe deemed necessary. PA C.S.A. §1731(b)(1).

> It is irrefutable that the municipal government entity responsible for the government, management and requirement for making rules is the Board of Inspectors of York County, a/k/a York County Prison Board.

17

In Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d. 611 (1978), it was held that "congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691.

It is the prison board not the County of York that was directed by the legislature **to meet monthly and to make such rules and regulations for the government and management of the prison and the safekeeping discipline and employment of the prisons as may be deemed necessary.** The Act of August 11, 2009 PL 147, No. 33, §7, 61 Pa. C.S.A. §1732 (b)(1).

### Other Claimed Constitutional Violations:

### Equal Protection, Retaliation, Civil Conspiracy, Failure To Prevent Conspiracy, and "Monell"

Plaintiff's First Amended Complaint utilizes other constitutional theories of liability under 42 U.S.C. §1983 and 42 U.S.C. §1985. The basis of these claims are founded on legal conclusions and de minimis claims of discrimination. In addition, the evidence suggests that any unequal protection or retaliation claims are imaginary and revealed by "Inmate Saidi's" conduct and groundless accusations.

There is no credible evidence that the individual Defendants entered into an agreement with a subsequent over-act, that would deny the Plaintiff one of his constitutional

rights and that, in fact, his constitutional rights were denied to him. <u>Hadley v. Gutierrez</u>, 526 Fed. 3d 1324, 1332 (11th Circ. 2008).

It is submitted that in addition to the inadequacy of proof of the Plaintiff's claims against the individual Defendants, they are entitled to the defense of qualified immunity because of the Plaintiff's bizarre allegations concerning his interpretation of his constitutional rights.

In <u>Procunier v. Navarrette</u>, 434 U.S. 555 (1978), the Supreme Court of the United States determined that qualified immunity would be extended to prison officials.

There are three (3) questions that are involved in determining the applicability of qualified immunity. First, was there a settled constitution rule at the time of the challenged conduct? Two, if so, should the Defendants have known of the rule? Three, if they should have known of the rule, should they have known their conduct violated the rule. Prison officials can only be responsible for clearly settled law which they had a duty to know. <u>Procunier v. Navarrette</u>, 434 U.S. 555 (1978), <u>Taylor v. Barkes</u>, Supra. p. 2024. It is summited that based upon the uncontested facts of this case all individual County Defendants should be granted qualified immunity.

19

## IV.    CONCLUSION

The claims by "Inmate Saidi" that we was the victim of unlawful force should be dismissed. There is no credible evidence that on December 30, 2019, that the Correction Officers used excessive, sadistic, or malicious force in violation of the "Inmate Saidi's" constitutional rights.

"Inmate Saidi's" complaints about verbal abuse are also not the basis for a 1983 claim. Verbal abuse, threats, or defamation by a guard are not cognizable as establishing a 1983 violation.

York County does not operate the York County Prison. In any event, there is no evidence submitted in this case that the policies and rules of the prison which concern the prison conditions described by the Plaintiff or the use of force at the prison that were inadequate or not followed. There is simply no evidence that establishes a constitutional violation by any of the York County Defendants.

York County Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

By:  /s/ Donald L. Reihart, Esquire
Donald L. Reihart, Esquire
Sup. Ct. I.D. #PA 07421
28 E. Market Street, 2nd Floor
York, PA  17401
Phone:  (717)755-2799, (717)771-9745
Email:  email@reihartlaw.com
dlreihart@yorkcountypa.gov
Assistant Solicitor for County of York,
Date: March 15, 2021   Attorney for York County Defendants

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEN MOSBAH SAIDI | : |
| Plaintiff | : NO. 3:20-CV-00894 |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| YORK COUNTY d/b/a YORK COUNTY PRISON, and TROY TYSON, ERIC BUSH, BRANDON BANKARD, MICHAEL BAUGHER JOHN DARYMAN, C.O. MARIN, C.O. SCHNEIDER, JOSHUA MARTINEZ, and JOHN/JANE DOES, in their individual capacities, | : |
| Defendants | : |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2021, I electronically filed the foregoing Brief of Defendants York County d/b/a York County Prison, Troy Tyson, Eric Bush, Brandon Bankard, Michael Baugher, John Daryman, C.O. Marin, C.O. Schenider, and Joshua Martinez's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system.

Leticia C. Chavez-Freed
The Leticia-Freed Law Office
2600 N. 3rd Street, 2nd Flr.
Harrisburg, PA 17110
Counsel for Plaintiff

Respectfully submitted,

By:  /s/ Donald L. Reihart, Esquire
Donald L. Reihart, Esquire
Sup. Ct. I.D. #PA 07421
28 E. Market Street, 2nd Floor
York, PA  17401
Phone:  (717)755-2799, (717)771-9745
Email:  email@reihartlaw.com
dlreihart@yorkcountypa.gov
Assistant Solicitor for County of York,
Date: March 15, 2021                 Attorney for York County Defendants

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEN MOSBAH SAIDI                          :
                                          :      NO. 3:20-CV-00894
                    Plaintiff             :
                                          :
          v.                              :
                                          :      JURY TRIAL DEMANDED
YORK COUNTY d/b/a YORK                    :
COUNTY PRISON, and                        :
TROY TYSON, ERIC BUSH,                    :
BRANDON BANKARD,                          :
MICHAEL BAUGHER                           :
JOHN DARYMAN,                             :
C.O. MARIN, C.O. SCHNEIDER,               :
JOSHUA MARTINEZ, and                      :
JOHN/JANE DOES, in their                  :
          individual capacities,          :
                                          :
                    Defendants            :

### CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully submitted,
By: /s/ Donald L. Reihart, Esquire
Donald L. Reihart, Esquire
Sup. Ct. I.D. #PA 07421
28 E. Market Street, 2nd Floor
York, PA 17401
Phone: (717)755-2799, (717)771-9745
Email: email@reihartlaw.com
dlreihart@yorkcountypa.gov
Assistant Solicitor for County of York,
Attorney for York County Defendants

Date: March 15, 2021